UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD MASTROGIOVANNI, | |
| Plaintiff, | Case No. 24-cv-10598 |
| v. | Honorable Robert J. White |
| CITY OF STERLING HEIGHTS, et al., | |
| Defendants. | |

## ORDER GRANTING STERLING HEIGHTS'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S COMPLAINT

This case involves Plaintiff Richard Mastrogiovanni's claims under 42 U.S.C. § 1983 against Defendants City of Sterling Heights ("Sterling Heights" or "the City"), Shelby Township, and two Shelby Township police officers, N. Pomante and Officer Phelps. (ECF No. 1).   Before the Court is Sterling Heights's motion to dismiss all claims against the City pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (ECF No. 12).   The Parties fully briefed the motion and the Court held oral argument.   For the following reasons, the Court grants the motion.

## I.     Background

Plaintiff filed this action on March 8, 2024, asserting two materially identical counts of malicious prosecution under 42 U.S.C. § 1983 against all Defendants. (ECF No. 1).  Plaintiff alleges that on January 4, 2022, he was involved in a road-rage incident with another driver, who Defendants later inaccurately characterized as a victim. (*See* ECF No. 1, PageID.8-11).  According to Plaintiff, the other driver, after almost striking Plaintiff's vehicle from behind, became irate and followed Plaintiff when he parked nearby. (ECF No. 1, PageID.8).  Plaintiff alleges that the other driver exited his car and approached Plaintiff, at which point Plaintiff pointed a gun at the other driver and warned him not to approach. (ECF No. 1, PageID.8).  Plaintiff alleges further that he tried to drive away, but the other driver continued to follow him—and during this time came at Plaintiff "head-on" and almost t-boned him—until Plaintiff eventually evaded the other driver. (ECF No. 1, PageID.8-9).

According to Plaintiff, shortly after this incident, the "Sterling Heights Police Department" stopped his vehicle, retrieved the vehicle's video to review the incident, and confiscated Plaintiff's firearm. (ECF No. 1, PageID.9).  Plaintiff was arrested and ultimately charged with reckless driving; but this charge was later dismissed, and Plaintiff was instead assessed a fine for a double-parking violation. (ECF No. 1, PageID.5, 7, 9-11).

Plaintiff claims that he acted legally; officers lacked probable cause or even mere suspicion that he participated in any crime; and Defendants unlawfully deprived Plaintiff his property, deprived him his right to bear arms, and subjected him to a wrongful and malicious investigation, arrest, and prosecution. (ECF No. 1, PageID.3-7, 9-11)

Regarding Officers Phelps and Pomante, Plaintiff specifically asserts that they "actively participated in the arrest and securing of the arrest warrant and criminal charges against Plaintiff," misstated material facts to the Macomb County prosecutor and the district court, and made grossly negligent and unreliable determinations regarding probable cause due either to incompetence or inadequate training. (ECF No. 1, PageID.4, 6-7).  No Sterling Heights officers are named in the complaint. Nevertheless, Plaintiff alleges that "[t]o the extent [Sterling Heights] did supervise their subordinate Defendants' investigation, [Sterling Heights]'s supervision authorized, approved, or knowingly acquiesced in unconstitutional violations by its subordinate Defendants." (ECF No. 7).

Plaintiff also alleges that "Defendants collectively and jointly made and implemented a policy[1]" "to arrest, prosecute, obtain a criminal complaint against

---

[1] Although neither Macomb County nor any Macomb County prosecutor is identified as a defendant in the complaint, Plaintiff asserts that these parties were involved in setting and implementing this policy—and that Macomb County "authorized, approved, or knowingly acquiesced in unconstitutional violations by [its] prosecutors." (*See* ECF No. 1, PageID.7-8, 12-13).

Plaintiff and confiscate Plaintiff's firearm without any evidence whatsoever of any criminal activity." (ECF No. 1, PageID.12-13).  And Plaintiff asserts that Phelps and Pomante "were the ultimate decision makers for [Shelby Township] and they made, established and implemented" this policy (ECF No. 1, PageID.12).  According to Plaintiff, this unwritten yet pervasive unconstitutional policy was the moving force of the alleged constitutional violations at issue. (ECF No. 1, PageID.13).

Sterling Heights now moves to dismiss. (ECF No. 12).

## II.    Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to

relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

"When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To the extent that Sterling Heights provides a single attachment with its reply brief, the Court need not consider this to resolve Sterling Heights's motion.

## III.    Analysis

A municipality cannot be held liable under § 1983 simply because it employs a tortfeasor, nor can it be liable "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); see also *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of respondeat superior."). Instead, a municipality may be held liable "only for '[its] own illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). A plaintiff asserting a municipal liability claim under *Monell* "must connect the employee's conduct to a municipal 'policy' or 'custom.'" *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022) (quoting *Brown*, 520 U.S. at 403).

To do so, a plaintiff must demonstrate one of the following: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  A plaintiff then "must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404 (emphasis in original).

Sterling Heights's motion argues that the complaint is insufficient to establish its liability for the constitutional violations alleged. (ECF No. 12).  Sterling Heights specifically argues that it cannot be liable because (1) the complaint identifies no Sterling Heights employee as responsible for the conduct at issue, and (2) Plaintiff fails to establish that a Sterling Heights custom or policy caused the alleged constitutional injury. (ECF No. 12, PageID.102-03, 105-08).  In response, Plaintiff argues that "the complaint states forthrightly [Sterling Heights Police Department] effectuated the unconstitutional arrest . . . [and] seizure of Plaintiff's firearm and personal property." (ECF No. 15, PageID.136).

Plaintiff specifically highlights paragraphs 25, 37, 62, 71, and 72 of the complaint, arguing that he alleged Sterling Heights "fail[ed] to provide Plaintiff with a fair and reliable determination of probable cause," "illegally confiscate[ed]

Plaintiff's firearm," "falsely and maliciously lev[ied] criminal charges against Plaintiff," "ma[de] and implement[ed] an unconstitutional policy and decision that was the 'moving force' of constitutional violations," "knowingly[] fail[ed] to supervise Defendant (unnamed) officers" and "knowingly approv[ed] 'unconstitutional violations by subordinate officers.'" (ECF No. 15, PageID.136-37).  Plaintiff's cited sections of the complaint explicitly state the following:

> 25. The Defendants failed to provide Plaintiff with a fair and reliable determination of probable cause at the investigative phase of the criminal proceedings in violation of the Fourth Amendment.

\*          \*          \*

> 37. To the extent Defendants CITY OF STERLING HEIGHTS did supervise their subordinate Defendants' investigation, said Defendant's supervision authorized, approved, or knowingly acquiesced in unconstitutional violations by its subordinate Defendants.

\*          \*          \*

> 62. . . . Defendants falsely and maliciously levied criminal charges against Plaintiff.

\*          \*          \*

> 71. Officers PHELPS and POMANTE were the ultimate decision makers for SHELBY TOWNSHIP and they made, established and implemented Defendants' policy to arrest, prosecute, obtain a criminal complaint against Plaintiff and confiscate Plaintiff's firearm without any evidence whatsoever of any criminal activity.

> 72. Defendants collectively and jointly made and implemented the policy and decision.  This was the "moving force" of the constitutional violations herein.

(ECF No. 1, PageID.6-7, 11-13).

Plaintiff argues further that he sufficiently pled a claim for municipal liability against Sterling Heights because the above-referenced allegations provide "a nexus between the policy decision to arrest and prosecute [Plaintiff] without probable cause and the Fourth Amendment Constitutional violation he suffered." (ECF No. 15, PageID.138).  He also asserts that he sufficiently pled a failure-to-supervise claim because "the Complaint plausibly alleges [Sterling Heights] at least knowingly or tacitly tolerates[] a subordinate's unconstitutional conduct." (ECF No. 15, PageID.138).  And Plaintiff argues that "even if [Sterling Heights]'s unnamed officers made only a ***single decision*** to file criminal charges against Plaintiff and prosecute him without probable cause, that policy decision is sufficient to support municipal liability against Defendant under" *Pembaur v. Cincinnati*, 475 U.S. 469 (1986). (ECF No. 15, PageID.137 (emphasis in original)).

Lastly, Plaintiff asks the Court, if it determines the complaint lacking, to dismiss without prejudice and grant him leave to file an amended complaint under Fed. R. Civ. P. 15(a)(2). (ECF No. 15, PageID.139-40).  Plaintiff explains his position as follows:

> While the Complaint alleges Defendant "authorized, approved or knowingly acquiesced in unconstitutional violations by its subordinate" officers (Comp. ¶37), it only identifies Officers Phelps & Pomante,

8

who[] are employed by Defendant.[2]   ECF No. 12, passim.   The
Complaint should have alleged: *the names of Defendant's "subordinate
officers are currently unknown.["]*

(ECF No. 15, PageID.139-40 (emphasis in original)).

At the hearing, Plaintiff's counsel said he would add these currently-unknown
Sterling Heights officers as John Does in an amended complaint.  And he proposed
for the first time adding a new allegation than some Sterling Heights employee
deleted the car video that police took from Plaintiff.

In reply, Sterling Heights argues that a single decision may only result in
municipal liability under *Pembaur* if made by a final policymaker, which does not
apply to any of the subordinate patrol officers at issue here. (ECF No. 15,
PageID.155-58).   Sterling Heights also argues that Plaintiff failed to plead facts
necessary to sustain a failure-to-supervise claim, and that Plaintiff's authority on this
point does not show otherwise. (ECF No. 16, PageID.158).  Finally, Sterling Heights
argues that amendment of the complaint is unwarranted and, if allowed, would be
futile. (ECF No. 16, PageID.158-60).

A.    **Single Decision and *Pembaur***

According to *Pembaur*, "it is plain that municipal liability may be imposed
for a single decision by municipal *policymakers* under appropriate circumstances."

---

[2] Although this seems to imply that Officers Phelps and Pomante were employees of
Sterling Heights, the record is otherwise clear that they were employees of Shelby
Township.

*Pembaur*, 475 U.S. at 480 (emphasis added).  The Sixth Circuit later clarified that, under *Pembaur*, "the municipality is liable for an official's unconstitutional action only when the official is the one who has the final authority to establish municipal policy with respect to the action ordered." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993) (cleaned up).  "Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 814 (6th Cir. 2005).

Here, although the complaint asserts that Officers Phelps and Pomante were "the ultimate decision makers" for Shelby Township (ECF No. 1, PageID.12), there is no similar allegation regarding Sterling Heights or any Sterling Heights employee. Instead, the only allegations that relate to a Sterling Heights employee—albeit without much specificity—are that: (1) the "Sterling Heights Police Department" stopped Plaintiff, retrieved his car video, and confiscated his firearm; and (2) "[t]o the extent [Sterling Heights] did supervise their subordinate Defendants' investigation, [Sterling Heights]'s supervision authorized, approved, or knowingly acquiesced in unconstitutional violations by its subordinate Defendants." (ECF No. 1, PageID.7, 9).

The Court concludes that this does not suffice at the pleading stage to establish Sterling Heights's liability under the final-policymaker prong of *Burgess*, 735 F.3d at 478. *See Baugh v. Miller*, No. 24-11177, 2024 U.S. Dist. LEXIS 208303, at *1, 6-7 (E.D. Mich. Nov. 15, 2024) (dismissing under Rule 12(b)(6) a claim against the City of Detroit related to a police officer's conduct in part because "Baugh has not identified the relevant policy makers, any facts supporting what actions those policy makers may have taken that demonstrated an approval (tacit or otherwise) of the practices he complains about, or that the City of Detroit had any reason to believe that the relevant actor(s) here were likely to violate his constitutional rights."); *Coopwood v. Cnty. of Wayne*, No. 20-12092, 2024 U.S. Dist. LEXIS 168443, at *7 (E.D. Mich. Sept. 18, 2024) (complaint merely stating that a jail guard was acting in her official capacity under the color of state law when using excessive force "d[id] not allege sufficient facts to support that . . . a Wayne County official with final decision-making authority ratified any of [the guard]'s alleged actions").

Even were the Court to overlook that the only allegation related to an employee having final decision-making authority is specific to Shelby Township and their officers, analogous caselaw indicates that subordinate police officers merely exercising discretion, as the record seems to show here,[3] are not considered final

---

[3] Plaintiff repeatedly refers to the unnamed Sterling Heights officers allegedly involved as subordinates. And this understanding is consistent with the complaint,

policymakers.  *See Miller*, 408 F.3d at 809, 814 (shift commander for corrections officers had no final authority to implement policy); *Metris-Shamoon v. City of Detroit*, 545 F. Supp. 3d 506, 520-21 (E.D. Mich. 2021) (Detroit police sergeants overseeing drug raids not authorized policymakers).

And though some courts in this circuit have stated that whether an official possessed final policymaking authority involves factual issues not before the court in a motion to dismiss, these cases are distinguishable because they involved (1) police chiefs—rather than a subordinate officer—allegedly having such authority, (2) each plaintiff specifically alleged that the official was a final policymaker, and (3) state and local law was unclear regarding the officials' authority under the circumstances.  *See Rideout*, 691 F. Supp. 3d 816, 831-32 (E.D. Mich. 2023); *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 629-30 (W.D. Mich 2015).

Although Plaintiff's counsel during oral argument indicated for the first time that the Sterling Heights chief of police *may* have delegated policymaking authority to subordinates or otherwise ratified officers' unconstitutional conduct, this allegation is nowhere in the complaint or Plaintiff's briefing, and Plaintiff's counsel did not mention this with respect to the request for leave to amend the complaint.  In

_____

which only mentions Sterling Heights with respect to officers investigating and stopping Plaintiff and confiscating his car video and firearm (it remains unclear whether or to what extent any Sterling Heights employee was involved in Plaintiff's arrest and prosecution, though defense counsel at the hearing said this was exclusively handled by Shelby Township and Macomb County).

any event, this assertion is too speculative to establish Sterling Heights's liability. *See Bredesen*, 500 F.3d at 527.

As a final matter, to the extent that various allegations in Plaintiff's complaint relate generally to all "Defendants," these fail to give Sterling Heights the requisite fair notice of Plaintiff's specific claims against it and the grounds on which they rest. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (explaining that a pleading referring to all defendants generally and categorically is insufficient to allege each individual's personal involvement and, therefore, liability); *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."); *Iqbal*, 556 U.S. at 677 ("each Government official . . . is only liable for his or her own misconduct."); *see also Marcilis*, 693 F.3d at 596 ("simply lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct fails to satisfy the minimum standard that a complaint give each defendant fair notice of what the plaintiffs claim is and the ground upon which it rests.") (cleaned up).

For these reasons, Plaintiff has failed to plead "that an official with final decision-making authority ratified illegal actions." *See Burgess*, 735 F.3d at 478. And Plaintiff has not pled the existence of any illegal *official* policy. The Court now

turns to whether Plaintiff sufficiently pled the existence of (1) a policy of inadequate training or supervision or (2) a custom of tolerance or acquiescence of federal rights violations.

### B.     Failure to Train or Supervise

When a *Monell* claim is based on a failure to train or supervise, a plaintiff must plead facts that would show: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 319 (6th Cir. 2023); *see also Gordon v. Bierenga*, No. 18-13834, 2019 U.S Dist. LEXIS 85969, at *5-6 (E.D. Mich. May 22, 2019).

A plaintiff most commonly demonstrates a municipality's deliberate indifference by pointing to a failure to act "in response to repeated complaints of constitutional violations by its officers." *Howell*, 67 F.4th at 319.  "But a plaintiff can rely on a single incident to establish liability in a narrow range of circumstances 'if the risk of the constitutional violation is so obvious or foreseeable' that it amounts to deliberate indifference for the municipality to fail to prepare its officers for it." *Rideout v. Shelby Twp.*, 691 F. Supp. 3d 816, 830 (E.D. Mich. 2023) (quoting *Howell*, 67 F.4th at 319).  Stated differently, a single incident may establish liability if "'accompanied by a showing that [the government] has failed to train its employees

to handle recurring situations presenting an obvious potential' for a constitutional violation." *Shadrick v. Hopkins Cty*, 805 F.3d 724, 738-39 (6th Cir. 2015) (quoting *Brown*, 520 U.S. at 409).

Here, Plaintiff asserts in relevant part that "[t]o the extent [Sterling Heights] did supervise their subordinate Defendants' investigation, [Sterling Heights]'s supervision authorized, approved, or knowingly acquiesced in unconstitutional violations by its subordinate Defendants." (ECF No. 1, PageID.7).  Plaintiff argues that he sufficiently pled a failure-to-supervise claim because, per the complaint, Sterling Heights "at least knowingly or tacitly tolerates[] a subordinate's unconstitutional conduct." (ECF No. 15, PageID.138).  This argument seems to implicate a custom of tolerance (*see infra* Section III.C) rather than any failure to train or supervise, however.  And Plaintiff's supporting authority on this point does not even relate to a failure-to-train claim under *Monell*. *See Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016).

Most importantly, the complaint completely lacks any showing of deliberate indifference.  Plaintiff has not pointed to any prior similar constitutional violations, so he has not plausibly alleged a failure to train or supervise under the first method. *See Rideout*, 691 F. Supp. 3d at 830.  Nor do the allegations in the complaint give rise to a plausible inference that the need for additional training or supervision to

avoid incidents like the wrongs alleged was so obvious that any failure to provide such would have amounted to deliberate indifference. *See id.*

Although the complaint alleges that (1) Officers Phelps and Pomante were inadequately trained and (2) "Defendants collectively . . . through . . . a failure to train[]" violated Plaintiff's rights (ECF No. 1, PageID.2, 6), this lacks sufficient notice of Sterling Height's involvement with and liability for any failure to train or supervise. *See Marcilis*, 693 F.3d at 596.  And even accepting Plaintiff's general reference that Defendants collectively failed to train employees involved here, this is not enough to state a claim.

> [A] *Monell* claim is inadequately pleaded where the plaintiffs allege no facts related to the municipal defendant's training or supervision of its officers; have provided no facts concerning what the defendant's training policies were, why they were inadequate, how the defendant was deliberately indifferent, or how any alleged failures in training or supervision related to the plaintiff's injuries.

*Matuscak v. Argentine Twp. Police Dep't*, No. 22-12621, 2023 U.S. Dist. LEXIS 207609, at *6 (E.D. Mich. Nov. 20, 2023).

"Indeed, a plaintiff's use of phrases such as 'failure to train' and 'failure to supervise' is meaningless without any factual allegations." *Id.* (cleaned up).

Because Plaintiff only presents bare, conclusory allegations that "Defendants" failed to train employees, with no specific facts whatsoever related to Sterling Heights's actual training or supervision, he has failed to plausibly allege any failure to train or supervise by Sterling Heights. *See id.* ("[The complaint] contains no

factual allegations describing the municipal defendants' training programs, how they are inadequate, or how they caused [the plaintiff's] injuries. Accordingly, the proposed *Monell* failure to train claim . . . would not survive a motion to dismiss."); *Gordon*, 2019 U.S Dist. LEXIS 85969 at *6-7) (the plaintiff failed to sufficiently plead any *Monell* claim when she only asserted "a list of bare legal recitals and conclusions"); *Knox v. Scruggs*, No. 17-10900, 2018 U.S. Dist. LEXIS 54545, at *27-28 ("Nothing in plaintiff's complaint suggests a sufficient basis for a *Monell* claim for failure to train or failure to supervise or any other theory. Plaintiff's complaint contains only a conclusory allegation that the County did 'not properly oversee and or manage their employees, unknown name supervisor, therefore condoned the misconduct [sic].'") (cleaned up).

## C.   Custom of Tolerance

Plaintiff argues that Sterling Heights "tacitly tolerates" and/or "knowingly acquiesce[s]" to unconstitutional conduct. (ECF No. 15, PageID.138). But the complaint did not adequately plead that there was any *custom* of tolerating such conduct.

"A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 507 (6th Cir. 1996) (quoting *Monell*, 436 U.S. at 690-91). The Sixth Circuit has expanded on the understanding by holding that a

17

plaintiff, to prevail on a custom-of-tolerance claim, must show "that there was a pattern of inadequately investigating similar claims." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Allegations of "a *single* failure" to investigate do not suffice. *Pineda v. Hamilton Cty*, 977 F.3d 483, 495 (6th Cir. 2020) (emphasis in original). A plaintiff must show "a clear and persistent pattern of violations in earlier cases." *Id.* (citation and internal quotation marks omitted). In other words, there must be "multiple earlier inadequate investigations and they must concern comparable claims." *Id.* (quoting *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2017)).

As discussed, Plaintiff's complaint does not identify any prior similar constitutional violations. Nor does he plead that this has been a part of some clear pattern of conduct. Plaintiff "simply ha[s] not demonstrated a pattern of inadequate investigation of similar claims as required." *Burgess*, 735 F.3d at 478; *see also Owens v. Schuette*, No. 24-10787, 2024 U.S. Dist. LEXIS 185512, at *39 (E.D. Mich. Oct. 10, 2024). Any claim against Sterling Heights based on a custom-of-tolerance theory therefore fails.

In sum, Plaintiff failed to plead any cognizable claim against Sterling Heights.

### D.   Amending the Complaint

Fed. R. Civ. P. 15(a)(2) permits a party to amend its pleading with leave of the court, which shall be freely given "when justice so requires." However, "a court

considering a motion to dismiss must focus only on the allegations in the pleadings."
*Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020)
(cleaned up).  "If plaintiffs believe they need to supplement their complaint with
additional facts to withstand a motion to dismiss, they have a readily available tool:
a motion to amend the complaint under Rule 15." *Id.* (cleaned up).  "They cannot
amend their complaint in an opposition brief or ask the court to consider new
allegations (or evidence) not contained in the complaint." *Id.* (cleaned up).

Nevertheless, leave to amend need not be granted when a proposed
amendment would be futile. *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir.
2022). "An amendment is futile when, after including the proposed changes, the
complaint still could not withstand a Rule 12(b)(6) motion to dismiss." *Id.*
(quotations and citation omitted).  Here, Plaintiff seeks to clarify in an amended
complaint that the names of Sterling Height's officers allegedly involved in this
matter are currently unknown, and to name them as John Does.  He also now seeks
to add an allegation that some unknown Sterling Heights's employee destroyed
Plaintiff's car video.

But these changes would in no way alter the Court's earlier analysis.  Plaintiff
has essentially failed to plead sufficient facts regarding Sterling Heights's liability
as a municipality, and the proposed alteration would not affect any of the deficiencies
discussed above that are specific to Sterling Heights's—rather than its employees—

conduct in this case.  *See Brown*, 520 U.S. at 404 (*Monell* liability requires that a municipality's "*deliberate* conduct . . . was the 'moving force' behind the injury alleged.") (emphasis in original).

Accordingly, because Plaintiff did not follow the proper procedure to seek leave to amend the complaint—and because amendment would be futile anyway—his request is denied.

* * *

For the reasons given, the Court ORDERS that the motion to dismiss  (ECF No. 12) is GRANTED.


IT IS FURTHER ORDERED that all Plaintiff's claims against Sterling Heights are dismissed with prejudice.


Dated: March 24, 2025                        s/Robert J. White
                                             Robert J. White
                                             United States District Judge

20